JOHN J. ATALLAH, CA Bar No. 294116
  jatallah@foley.com
**FOLEY & LARDNER LLP**
555 SOUTH FLOWER STREET, SUITE 3300
LOS ANGELES, CA 90071-2418
TELEPHONE:  213.972.4500
FACSIMILE:   213.486.0065

BRYAN T. METTE *(admitted pro hac vice)*
  bmette@foley.com
**FOLEY & LARDNER LLP**
150 E GILMAN STREET, SUITE 5000
MADISON, WI 53703-1482
TELEPHONE:  608.257.5035
FACSIMILE:   608.258.4258

Attorneys for Defendant
PAYPAL, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPHINE LEE, | Case No. 3:22-CV-02718-SK |
| Plaintiff, | **DEFENDANT PAYPAL, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| CITIGROUP HOLDINGS, INC. dba CITIBANK, N.A. and PAYPAL, INC., | |
| Defendants. | Date:     September 30, 2024 |
| | Time:   9:30 a.m. |
| | Ctrm:   C |
| | Honorable Sallie Kim, Magistrate Judge |
| | Complaint Filed: May 5, 2022 |
| | FAC Filed: June 2, 2022 |
| | Trial Date: January 14, 2025 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 30, 2024, at 9:30 a.m., or as soon thereafter as this matter may be heard in Courtroom C – 15th floor of the above-captioned Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant PayPal, Inc. ("PayPal") will, and hereby does, move this Court, pursuant to Federal Rule of Civil Procedure 56, for an order granting summary judgment in PayPal's favor as to Plaintiff Josephine Lee's claims for violation of the Electronic Fund Transfer Act (15 U.S.C. §§ 1693, *et seq.*), violation of California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*), negligence, and conversion alleged in Plaintiff's First Amended Complaint (the "FAC").

PayPal is entitled to summary judgment in its favor because there are no triable issues of material fact, and Plaintiff cannot prove the essential elements of each of her alleged claims. This Motion is based upon this this Notice, the accompanying Memorandum of Points and Authorities, Declaration of John J. Atallah and the exhibits thereto, the records and pleadings on file herein, and upon such oral or documentary evidence as may be presented at the time of hearing thereon.

DATED: August 26, 2024

**FOLEY & LARDNER LLP**
JOHN J. ATALLAH
BRYAN T. METTE

*/s/ John J. Atallah*
John J. Atallah
Attorneys for Defendant PayPal, Inc.

## <u>STATEMENT OF THE ISSUES TO BE DECIDED</u>

1. Does Plaintiff Josephine Lee's federal Electronic Fund Transfer Act ("EFTA") claim fail because the EFTA and its implementing regulation, Regulation E, do not apply to a PayPal account that never belonged to Plaintiff and to which she never had access?

2. Does the one satisfaction rule, taken together with other equitable principles, prevent Plaintiff from seeking double recovery for alleged damages when those damages have already been wholly compensated through a separate arbitration proceeding against the alleged joint tortfeasor, Citibank, N.A. ("Citibank")?

3. Does Plaintiff's California Unfair Competition Law ("UCL") claim fail on the grounds that Plaintiff is not entitled to either of the UCL's limited remedies?

4. Does Plaintiff's UCL claim also fail because Plaintiff cannot prove PayPal engaged in unlawful, unfair, or fraudulent conduct?

5. Does Plaintiff's negligence claim fail because Plaintiff cannot establish the necessary elements of that cause of action under California law?

6. Does Plaintiff's California law conversion claim fail because it is undisputed that an unauthorized third party, not PayPal, stole the funds at issue from Plaintiff's Citibank account?

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................... 1

II.   STATEMENT OF UNDISPUTED MATERIAL FACTS ............................................ 1

    A.    THE UNAUTHORIZED THIRD PARTY STEALS FUNDS FROM PLAINTIFF'S CITIBANK ACCOUNT. ....................................................... 1

    B.    CITIBANK DENIES PLAINTIFF'S REIMBURSEMENT REQUESTS. .................... 3

    C.    PAYPAL ATTEMPTS TO HELP PLAINTIFF. ................................................. 3

    D.    PAYPAL FINALLY RECEIVES THE INFORMATION NEEDED TO LOCATE THE UNAUTHORIZED ACCOUNT. ................................................. 4

    E.    PLAINTIFF DIRECTS HER ANGER AND FRUSTRATION AT CITIBANK, NOT PAYPAL. ............................................................................. 5

    F.    PLAINTIFF FILES SUIT AGAINST CITIBANK AND PAYPAL. ........................... 6

    G.    CITIBANK IS ORDERED TO PAY ALL OF PLAINTIFF'S ALLEGED DAMAGES. ................................................................................ 6

III.  LEGAL STANDARD ................................................................................................... 7

IV.   ARGUMENT .............................................................................................................. 8

    A.    EFTA CLAIM .................................................................................. 8

        1.    The EFTA and Regulation E Do Not Apply to the Unauthorized Account. ................................................................................. 8

        2.    Plaintiff's Alleged Damages Cannot be Attributed to PayPal. ..................... 11

    B.    UCL CLAIM .................................................................................. 14

        1.    Plaintiff is Not Entitled to Either of the Limited Remedies Available Under the UCL. ................................................................. 14

        2.    PayPal's Conduct was Not Unlawful, Unfair, or Fraudulent. ....................... 17

    C.    NEGLIGENCE CLAIM ......................................................................... 19

        1.    Plaintiff Cannot Establish PayPal Owed Her a Legal Duty in Connection with the Investigation of Transactions Involving a PayPal Account that Did Not Belong to Her. ................................................. 19

        2.    Even if Plaintiff Could Establish a Legal Duty, PayPal Did Not Breach It. ............................................................................... 21

        3.    PayPal's Conduct is Not the Proximate Cause of Plaintiff's Injuries. ................................................................................. 21

        4.    Plaintiff Cannot Establish She Has Any Damages. .................................. 22

D.     CONVERSION CLAIM ................................................................22

V.    CONCLUSION ..................................................................................23

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ........................................................................................................ 7

*Attisha Enterprises, Inc. v. Cap. One, N.A.*,
    505 F. Supp. 3d 1051 (S.D. Cal. 2020) ........................................................................ 19

*Benn v. Allstate Ins. Co.*,
    569 F. Supp. 3d 1029 (C.D. Cal. 2021) ........................................................................ 16

*Big Red Box, LLC v. Square, Inc.*,
    2020 WL 465928 (D.S.C. Jan. 22, 2020) ..................................................................... 23

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011) ....................................................................................... 7

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ........................................................................................................ 15

*Crocker-Citizens Nat. Bank v. Control Metals Corp.*,
    566 F.2d 631 (9th Cir. 1977) ................................................................................... 22, 23

*Davis v. HSBC Bank Nevada, N.A.*,
    691 F.3d 1152 (9th Cir. 2012) ..................................................................................... 17

*Dorsey v. U.S. Bank National Association*,
    2012 WL 13001917 (M.D. La. Apr. 2, 2012) .................................................. 10, 11, 23

*DZ Rsrv. v. Meta Platforms, Inc.*,
    96 F.4th 1223 (9th Cir. 2024) ....................................................................................... 16

*FAA v. Cooper*,
    566 U.S. 284 (2012) ................................................................................................ 11, 12

*Fresno Motors, LLC v. Mercedes Benz USA, LLC*,
    771 F.3d 1119 (9th Cir. 2014) ............................................................................ 14, 15, 17

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
    896 F.2d 1542 (9th Cir. 1989) ....................................................................................... 7

*Hightower v. City & Cnty. of San Francisco*,
    77 F. Supp. 3d 867 (N.D. Cal. 2014) ..................................................................... 15, 17

*Hobbs by & through Hobbs v. Wells Fargo Bank, National Association*,
    2022 WL 17972163 (S.D. Cal. Sept. 14, 2022) ........................................................... 21

*Hodsdon v. Mars, Inc.*,
  891 F.3d 857 (9th Cir. 2018)..................................................................... 17

*Hodsdon v. Mars, Inc.*,
  162 F. Supp. 3d 1016 (N.D. Cal. 2016) .................................................... 17

*In re Google Assistant Priv. Litig.*,
  546 F. Supp. 3d 945 (N.D. Cal. 2021) ...................................................... 15

*In re Meta Pixel Tax Filing Cases*,
  2024 WL 1251350 (N.D. Cal. Mar. 25, 2024) ........................................... 14

*Jones v. Micron Tech. Inc.*,
  400 F. Supp. 3d 897 (N.D. Cal. 2019) ...................................................... 17

*Kanji v. Bank of Am., N.A.*,
  2020 WL 8175548 (C.D. Cal. Aug. 25, 2020) ...................................... 15, 16

*Lusinyan v. Bank of Am., N.A.*,
  2015 WL 12777225 (C.D. Cal. May 26, 2015) ........................................... 16

*Makhzoomi v. Sw. Airlines Co.*,
  419 F. Supp. 3d 1136 (N.D. Cal. 2019) ..................................................... 19

*Marquess v. Pennsylvania State Employees*,
  427 F. App'x 188 (3d Cir. 2011) ........................................................ 10, 11

*Maynard v. PayPal, Inc.*,
  2019 WL 3552432 (N.D. Tex. Aug. 5, 2019) ............................................. 20

*Miller v. Bank of Am., N.A.*,
  2022 WL 3704093 (E.D. Cal. Aug. 26, 2022) ...................................... 22, 23

*Nelson v. Pima Cmty. Coll.*,
  83 F.3d 1075 (9th Cir. 1996)..................................................................... 19

*Nia v. Bank of Am., N.A.*,
  2024 WL 1298004 (S.D. Cal. Mar. 26, 2024) ............................................ 18

*Nordberg v. Trilegiant Corp.*,
  445 F. Supp. 2d 1082 (N.D. Cal. 2006) ...................................................... 8

*Osofsky v. Zipf*,
  645 F.2d 107 (2d Cir. 1981)...................................................................... 12

*Phillips v. U.S. Customs & Border Prot.*,
  74 F.4th 986 (9th Cir. 2023)..................................................................... 16

*Prignoli v. Bruczynski*,
  2021 WL 4443895 (E.D.N.Y. Sept. 28, 2021) ........................................... 23

*Russello v. United States*,
    464 U.S. 16 (1983) ............................................................................................................. 13

*Ryan v. Foster & Marshall, Inc.*,
    556 F.2d 460 (9th Cir. 1977) ............................................................................................. 12

*Herrera v. TD Bank, N.A*,
    682 F. Supp. 1271 (S.D. Fla. 2023) .................................................................................. 10

*Seoul Semiconductor Co. v. Finelite, Inc.*,
    694 F. Supp. 3d 1199 (N.D. Cal. 2023) .............................................................................. 8

*Sparkman v. Comerica Bank*,
    2023 WL 8852487 (N.D. Cal. Dec. 21, 2023) .................................................................. 16

*Uthe Tech. Corp. v. Aetrium, Inc.*,
    808 F.3d 755 (9th Cir. 2015) ...................................................................................... 13, 14

*Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*,
    860 F. Supp. 1448 (C.D. Cal. 1993) ................................................................................... 7

*Widjaja v. JPMorgan Chase Bank, N.A.*,
    21 F.4th 579 (9th Cir. 2021) ............................................................................................... 8

**State Cases**

*Archer v. Coinbase, Inc.*,
    53 Cal. App. 5th 266 (2020) ............................................................................................. 19

*Berry v. Frazier*,
    90 Cal. App. 5th 1258 (2023) ..................................................................................... 22, 23

*Casey v. U.S. Bank Nat. Ass'n*,
    127 Cal. App. 4th 1138 (2005) ......................................................................................... 20

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
    973 P.2d 527 (Cal. 1999) .................................................................................................. 14

*Chazen v. Centennial Bank*,
    61 Cal. App. 4th 532 (1998) ............................................................................................. 20

*Das v. Bank of Am., N.A.*,
    186 Cal. App. 4th 727 (2010) ........................................................................................... 19

*Korea Supply Co. v. Lockheed Martin Corp.*,
    63 P.3d 937 (Cal. 2003) .................................................................................................... 14

*Kurtz-Ahlers, LLC v. Bank of Am., N.A.*,
    48 Cal. App. 5th 952 (2020) ....................................................................................... 19, 20

*Kwikset Corp. v. Superior Ct.*,
    246 P.3d 877 (Cal. 2011) ................................................................................. 15

*Lee v. Hanley*,
    354 P.3d 334 (Cal. 2015) ................................................................................. 22

*McCann v. Lucky Money, Inc.*,
    129 Cal. App. 4th 1382 (2005) ....................................................................... 20

*Ngu v. City Bail Bonds*,
    71 Cal. App. 5th 644 (2021) ............................................................................ 15

*Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*,
    49 Cal. App. 4th 472 (1996) ...................................................................... 19, 20

*Spates v. Dameron Hosp. Assn.*,
    114 Cal. App. 4th 208 (2003) .......................................................................... 22

*State Dep't of State Hosps. v. Superior Ct.*,
    349 P.3d 1013 (Cal. 2015) ............................................................................... 21

*Tavaglione v. Billings*,
    847 P.2d 574 (Cal. 1993) ................................................................................. 13

*Zhang v. Superior Ct.*,
    304 P.3d 163 (Cal. 2013) ................................................................................. 15

**Federal Statutes**

12 U.S.C. § 5514(d) ............................................................................................. 10

12 U.S.C. § 5581(b)(1) ......................................................................................... 10

15 U.S.C. § 1681(a)(2) ......................................................................................... 12

15 U.S.C. § 1681(a)(4) ......................................................................................... 12

15 U.S.C. § 1693 .................................................................................................... 8

15 U.S.C. § 1693a(12) ....................................................................................... 8, 10

15 U.S.C. § 1693(b) .............................................................................................. 12

15 U.S.C. § 1693b(a)(1) ....................................................................................... 10

15 U.S.C § 1693f .............................................................................................. 8, 10

15 U.S.C. § 1693f(a) .............................................................................................. 8

15 U.S.C. § 1693f(a)(2) ........................................................................................ 10

15 U.S.C. § 1693f(c) .................................................................................................. 10, 11

15 U.S.C. § 1693f(f)(2) ................................................................................................... 10

15 U.S.C. § 1693g(a)(2) .................................................................................................... 8

15 U.S.C. § 1693h(a) ...................................................................................................... 12

15 U.S.C. § 1693h(a)(1)–(3) ........................................................................................... 12

15 U.S.C. § 1693i(a) ....................................................................................................... 10

15 U.S.C. § 1693m(a)(1) ................................................................................................. 11

15 U.S.C. § 1693m(a) ..................................................................................................... 12

42 U.S.C. § 3604 ............................................................................................................ 12

**Federal Rules**

Fed. R. Civ. P. 56 ............................................................................................................. 7

Fed. R. Civ. P. 56(a) ........................................................................................................ 7

Fed. R. Civ. P. 56(c) ........................................................................................................ 7

Fed. R. Civ. P. 56(e)(3) .................................................................................................... 7

Fed. R. Civ. P. 56(g) ........................................................................................................ 7

**Federal Regulations**

12 C.F.R. Pt. 205, Supp. I § 205.3 ................................................................................. 10

12 C.F.R. Pt. 205, Supp. I § 205.3(a)(1)(i) .................................................................... 11

12 C.F.R. Pt. 1005, Supp. I § 1005.3(a)(1)(i) ................................................................ 10

12 C.F.R. §1005.3(a) ...................................................................................................... 10

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

In May 2021, Plaintiff Josephine Lee fell victim to an unauthorized third party who gained access to her bank account at Citibank, made transfers totaling $20,600 to a PayPal account that the third party had created in Plaintiff's name, and then drained the funds from that unauthorized PayPal account. PayPal worked diligently with Plaintiff to track down the fraudulent transactions at issue (which had been concealed by the unauthorized third party's use of a bill payment service), and provided information to Plaintiff in support of the separate investigation she had initiated with Citibank. Plaintiff expressed her appreciation of PayPal's efforts, thanking PayPal for "thoroughly investigat[ing]" her case.

Without any further word to PayPal, Plaintiff filed this lawsuit alleging violations of the Electronic Fund Transfer Act and California Unfair Competition Law and also asserting state law negligence and conversion claims. Citibank moved to compel arbitration and recently completed the first phase of an arbitration hearing in which the arbitrator awarded Plaintiff a total of $1,895,000 and indicated that additional amounts would be awarded to Plaintiff in the second phase of the arbitration proceeding.

While Plaintiff's loss of $20,600 is understandably frustrating, her prior inability to recover the funds from the unauthorized third party or Citibank (the institution that maintained the account from which the funds were stolen) does not make PayPal responsible under any of Plaintiff's theories. PayPal did not steal the funds, did not aid the theft, and did not directly or indirectly cause Plaintiff to suffer any damages. Nonetheless, Plaintiff is attempting to parlay her loss of $20,600 into another seven-figure payday and is seeking from PayPal a litany of damages that are not available to her. Worse yet, she is seeking an unlawful double recovery from PayPal for damages that an arbitrator has already ordered Citibank to pay in compensation for Plaintiff's alleged damages. For these reasons, and as set forth in greater detail below, PayPal respectfully requests that the Court grant summary judgment for PayPal on all of Plaintiff's claims.

### II.   STATEMENT OF UNDISPUTED MATERIAL FACTS

#### A.   The Unauthorized Third Party Steals Funds from Plaintiff's Citibank Account.

This action stems from a scheme perpetrated by an unauthorized third party that resulted in the theft of $20,600 from Plaintiff's bank account at Citibank (the "Citibank Account"). (Plaintiff's First

Amended Complaint, ECF 11, ¶¶ 18, 22.)[1] By means unknown to PayPal, the unauthorized third party gained access to Plaintiff's Citibank Account and, via Citibank's online bill payment service, initiated three separate transfers of $3,900, $6,800, and $9,900 from the Citibank Account to a PayPal account that the unauthorized third party had opened in Plaintiff's name without her knowledge or authorization. (ECF 11, ¶¶ 18, 22; Declaration of John J. Atallah in Support of Defendant PayPal Inc.'s Motion for Summary Judgment ("Atallah Decl.") ¶ 3, Exhibit A, Deposition Transcript of Josephine Lee ("Lee Dep.") at 30:16–31:3, 187:14–17; Atallah Decl. ¶ 4, Exhibit B, Deposition Transcript of Dennis Psota ("Psota Dep.") at 40:8–14.) These transfers were initiated on May 12, 2021, May 14, 2021, and May 18, 2021, respectively. (Lee Dep. at 30:8–31:3.) Plaintiff noticed the first two transactions after checking her bank account while on vacation in Mexico, prompting her to call Citibank on May 16, 2021, to dispute the transfers. (Lee Dep. at 31:4–7.) Plaintiff called Citibank again on May 19 after noticing the third transaction. (ECF 11, ¶ 23.)

During the same timeframe, Plaintiff also called PayPal to determine the details of the PayPal account to which the funds had been transferred. (Lee Dep. at 34:8.) Despite PayPal's best efforts, Plaintiff was unable to provide the necessary information that would enable PayPal to locate the fraudulent transactions and corresponding account because none of the transfers were made to Plaintiff's existing PayPal account—nor could they be traced back to her Citibank Account because the unauthorized third party had used Citibank's online bill payment service. (Lee Dep. at 60:11–19, 100:7–10; Psota Dep. at 40:10–14; Atallah Decl. ¶ 9, Exhibit G, Defendant PayPal, Inc.'s Responses to Plaintiff's Interrogatories, Set One ("PayPal's Resp. to Pltf.'s ROG") at ROG 6.)  At the time of the fraudulent transfers, Plaintiff had an existing PayPal account (the "Real Account"), which she had created around April 25, 2010, after agreeing to the terms of PayPal's User Agreement. (Lee Dep. at 149:3–20.)  The unauthorized third party did not transfer any of the stolen funds into the Real Account. (Lee Dep. at 60:11–19, 100:7–10.)  Instead, the unauthorized third party transferred the funds to an unauthorized PayPal account that they had created on May 8, 2021, in Plaintiff's name and without her knowledge (the "Unauthorized Account"). (Atallah Decl. ¶ 5, Exhibit C, Exhibit 10 from Psota Deposition.) To do so, the unauthorized third party used some of Plaintiff's identifying information, but linked an email address, BarbaraQWest@outlook.com, of which

---

[1] PayPal references filings on the docket in this matter with the shorthand "ECF __".

Plaintiff was unaware at the time. (Lee Dep. at 61:8–12, 187:14–17.) Plaintiff did not authorize the Unauthorized Account, was unaware it existed, never had the ability to log into it, and acknowledged it did not belong to her. (ECF 11, ¶¶ 57a–c, 61, 105b, f–g, 112; Lee Dep. at 60:11–15; 187:8–17.) The unauthorized third party later absconded with the funds from the Unauthorized Account. (Atallah Decl. ¶ 11, Exhibit I, Exhibit 8 from Lee Deposition ("Lee Dep. Exh.") at PP-LEE-000050).

### B.   Citibank Denies Plaintiff's Reimbursement Requests.

After learning that $20,600 had been stolen from her Citibank Account, Plaintiff had numerous communications with Citibank throughout 2021—both orally and in writing—as she attempted to recover her funds. (Lee Dep. at 111:1–19.) She was unsuccessful, as Citibank declined to credit her Citibank Account for the stolen funds and declined her requests for reimbursement multiple times. (Lee Dep. at 111:1–112:5.) Citibank memorialized these denials in correspondence it sent to Plaintiff. (Lee Dep. 114:3–8.) Plaintiff never sent copies of Citibank's written denials to PayPal. (Lee Dep. 114:17–20.)

Citibank denied Plaintiff's requests for reimbursement based on its conclusion that Plaintiff had in fact authorized the transfers. (Lee Dep. at 112:1–10.) Plaintiff continued to dispute this conclusion, while Citibank continued to deny her requests, eventually declaring, in September 2021, that it would no longer communicate with Plaintiff about her disputes. (Atallah Decl. ¶ 6, Exhibit D, Lee Dep. Exh. 7 at LEE000088). On or around July 1, 2021, Plaintiff filed a complaint against Citibank with the Consumer Financial Protection Bureau ("CFPB"). (Lee Dep. at 124:8–10.) Citibank responded to Plaintiff's CFPB complaint on July 13, 2021, standing by its prior conclusions and once again explaining the basis for its denial of Plaintiff's claim for reimbursement. (Atallah Decl. ¶ 7, Exhibit E, Lee Dep Exh. 5.).

In the course of her communications with Citibank during this time, Citibank provided to Plaintiff a copy of a document titled "Merchant Transaction Report." (Lee Dep. at 111:6–9; Atallah Decl. ¶ 8, Exhibit F, Lee Dep. Exh. 3.)

### C.   PayPal Attempts to Help Plaintiff.

From May through October 2021, PayPal engaged in calls with Plaintiff and investigated her inquiries in an effort to locate and provide information on the stolen funds. (PayPal's Resp. to Pltf.'s ROG 6; Lee Dep. at 35:21–36:2.) During that timeframe, Plaintiff spoke with multiple PayPal team members, each of whom sought in good faith to help her find the information she was looking for. (PayPal's Resp.

to Pltf.'s ROG 6.) In addition to calls placed by Plaintiff to PayPal, representatives at PayPal initiated a number of calls to Plaintiff as they continued to investigate and left Plaintiff voicemails on the occasions where representatives were unable to reach her. (Lee Dep. at 106:1–11.)

During calls with Plaintiff, PayPal team members asked Plaintiff to provide information that might help identify the PayPal account that received the funds, including the account number for her Citibank Account. (PayPal's Resp. to Pltf.'s ROG 6.) Because the unauthorized third party had used Citibank's online bill payment service to initiate the fraudulent transfers, and the use of that service obscures information about the underlying Citibank account, those transfers could not be located using Plaintiff's Citibank Account number. (PayPal's Resp. to Pltf.'s ROG 6; Psota Dep. at 40:10–14.) Further, because Plaintiff was unfamiliar with the Unauthorized Account, she was unable to provide any information to PayPal—for example, the associated email address and phone number—that would enable PayPal to track down the Unauthorized Account and related transfers. (*Id.*) Plaintiff cannot recall if she provided her social security number to PayPal in the course of these calls. (Lee Dep. at 36:13–19.)

**D.   PayPal Finally Receives the Information Needed to Locate the Unauthorized Account.**

On October 1, 2021, Plaintiff submitted to the CFPB a complaint against PayPal that included a number of attachments as exhibits. (Lee Dep. at 133:19–134:11; Lee Dep. Exh. 7.) Using the more detailed information in those attachments (which PayPal was then receiving for the first time), PayPal was able to locate the Unauthorized Account using trace information in the Merchant Transaction Report that Citibank had provided to Plaintiff. (PayPal's Responses to ROG 6.) After reviewing the complaint and investigating further, PayPal timely prepared and provided a response on October 15, 2021. (Lee Dep. Exh. 8.) In its response, PayPal informed Plaintiff and the CFPB of the investigation and PayPal's conclusion that Plaintiff was the victim of identity theft. (*Id.*) By that point in time, the unauthorized third party had already transferred the funds out of the Unauthorized Account. (*Id.*)

After PayPal responded to Plaintiff's CFPB complaint, PayPal and Plaintiff engaged in a series of email communications from October 2021 to November 2021.[2] (Lee Dep. at 165:3–166:2; Atallah Decl.

_____

[2] Some of these emails inexplicably only list the month, but not the date, year, or time they were sent, Plaintiff testified that these emails post-date PayPal's response to her CFPB complaint on October 15, 2021. (Lee Dep. at 167:8–16.)

¶ 12, Exhibit J, Lee Dep. Exh. 10.) In these emails, Plaintiff expressed her gratitude and appreciation to PayPal for thoroughly investigating her claims of fraud and providing her information to allow her to further dispute her claims with Citibank. (Lee Dep. at 167:17–168:17.) On October 18, 2021, she told PayPal that she "really appreciate[d] the information" that PayPal relayed to her. (Lee Dep. Exh. 10 at LEE000178.) She also expressed that "it seems Paypal is the only place that I can get some answers…." (*Id.*) Most importantly, she thanked PayPal for its efforts in investigating her fraud claims stating: "And thank you sooo much for taking the time to thoroughly investigate my case…" (*Id.*) All of these contemporaneous statements from Plaintiff belie her later attempts to rewrite history by alleging that PayPal "failed to make a full and proper investigation into Plaintiff's claim of fraud and theft" (ECF 11, ¶ 82), or "truly investigate the fraud." (Atallah Decl. ¶ 10, Exhibit H, Plaintiff's Responses to Defendant PayPal Inc.'s Interrogatories ("Pltf.'s Responses to PayPal's ROGs") at ROG 6.) Moreover, Plaintiff could not point to any evidence that PayPal actively withheld information from her during its investigation when given the opportunity at her deposition to do so. (Lee Dep. at 80:25-81:12.)

### E.   Plaintiff Directs Her Anger and Frustration at Citibank, not PayPal.

During discovery, Plaintiff produced several series of text messages that she exchanged with friends and acquaintances regarding the fraud incident. (Lee Dep. at 170:4–12, 173:24–174:9.) Throughout these text messages, Plaintiff repeatedly expressed her anger, frustration, and ire at Citibank *exclusively*, complaining that Citibank "refuse[d] to take any responsibility," treated its customers in a "heartless" manner, didn't "give a shit," had a "garbage" fraud department, and "claim[ed] no responsibility or don't care at fucking all." (Atallah Decl. ¶ 13, Exhibit K, Lee Dep. Exh. 11 at LEE002234, LEE002236, LEE002237, LEE002248, LEE002262.) She referred to Citibank as "assholes," "fucking assholes," and "shittybank." (Lee Dep. at 173:5–7, 174:13–175:5; Lee Dep. Exh. 11 at LEE002232, LEE002250, LEE002252, LEE002254, LEE002255, LEE002262, LEE 002263.) To summarize in her words, "I HATE shittybank!!!!" (Lee Dep. at 175:3–5; Lee Dep. Exh. 11 at LEE002263.)

In contrast to her anger, frustration, and hatred towards Citibank, <u>zero</u> of the text messages she exchanged with her friends and acquaintances relating to the stolen funds expressed any anger, frustration, or hatred towards PayPal. (*See generally* Lee Dep. Exh. 11.) At her deposition, Plaintiff attempted to explain this away, claiming PayPal was not the focus of her frustration at the time because PayPal

"pushed" her to focus her hatred on Citibank—but there is no evidence to support that conclusion. (Lee Dep. at 175:9–17.) Plaintiff also claimed at her deposition that PayPal caused her emotional distress and that she supposedly had text messages to support that assertion, yet admitted she had failed to preserve this supposed evidence prior to completing a factory reset on her phone in or around September 2021. (Lee Dep. at 47:17–48:5.) For the text conversations with friends and acquaintances that Plaintiff did save relating to the stolen funds—spanning from September 2021 to January 2022—none express or even hint at any semblance of emotional distress caused by PayPal. (*See generally* Lee Dep. Exh. 11.) Plaintiff's attempts to bolster her allegations of emotional distress caused by PayPal, as well as her attempts to blame PayPal for her alleged losses, were even contradicted by her own testimony at an arbitration hearing against Citibank mere weeks before her deposition in this case. At the arbitration hearing on April 16, 2024, Plaintiff responded to a question from Citibank's counsel about her suit against PayPal, stating that PayPal "wronged" her, but that it was "not even close to what Citi did." (Atallah Decl. ¶ 14, Exhibit L, Transcript of Arbitration Hearing ("Arbitration Transcript") at 97:11–13.) And despite her strident claims of emotional distress that PayPal allegedly caused her—which apparently are so great that they cannot be valued (Lee Dep. at 71:9–14)—Plaintiff testified at the arbitration hearing she did not know whether she was seeking emotional distress damages from PayPal. (Arbitration Transcript at 97:19–21.)

**F.   Plaintiff Files Suit Against Citibank and PayPal.**

On May 5, 2022, Plaintiff filed this action against Citibank and PayPal, asserting claims against both defendants for violations of the federal EFTA and California's UCL, as well as negligence and conversion claims under California law. (ECF 1.) Plaintiff later filed an Amended Complaint on June 2, 2022. (ECF 11.) Pursuant to the parties' stipulations, the Court stayed this action pending arbitration of Plaintiff's claims against Citibank and PayPal. (*See* ECF 19.) Plaintiff arbitrated her claims against Citibank in a two-day hearing that occurred in April 2024. Plaintiff's claims against PayPal were remanded from arbitration and the Court then lifted the stay as to PayPal on September 14, 2023. (*See* ECF 32.)

**G.   Citibank is Ordered to Pay All of Plaintiff's Alleged Damages.**

Following a two-day arbitration hearing on April 16 and 17, 2024 between Plaintiff and Citibank, a JAMS arbitrator awarded Plaintiff the following damages:

- $20,550 in economic damages (presumably the amount of the stolen funds less $50);

DEFENDANT PAYPAL INC.'S MOTION FOR SUMMARY JUDGMENT
Case No. 3:22-CV-02718-SK

1

- $625,000 in non-economic damages; and

2

- $1,000 in statutory damages.

3

(Atallah Decl. ¶ 15, Exhibit M, Arbitration Award.) The arbitrator then trebled the actual damages award

4

to $1,895,000 and indicated that punitive damages, costs, interest, and attorney fees would be determined

5

and awarded in a second phase of the arbitration. (*Id.*) Therefore, in all likelihood, Plaintiff will recover

6

well in excess of $2 million from Citibank when punitive damages and attorney fees are determined—all

7

on a claim involving an out-of-pocket loss of $20,600.

8

### III.   <u>LEGAL STANDARD</u>

9

Under Rule 56 of the Federal Rules of Civil Procedure, "[a] party may move for summary

10

judgment, identifying each claim or defense—or the part of each claim or defense—on which summary

11

judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows

12

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

13

of law." Fed. R. Civ. P. 56(a). In addition, a court may adjudicate portions of a claim or defense. *See* Fed.

14

R. Civ. P. 56(a); *see also Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 860 F. Supp. 1448, 1450 (C.D.

15

Cal. 1993). This adjudicatory power extends to particular issues or other material facts within a claim or

16

defense. *See* Fed. R. Civ. P. 56(g).

17

Once the moving party demonstrates a lack of a genuine issue of material fact, the nonmoving

18

party must set forth specific evidence showing that there remains a genuine issue for trial. *Anderson v.*

19

*Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A nonmoving party cannot merely rest upon its allegations

20

or denials in its pleading as a basis for demonstrating a genuine triable issue. *Id.* Conclusory or speculative

21

testimony is insufficient to defeat summary judgment. *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys.,*

22

*Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011). Instead, the responding party must present admissible evidence

23

sufficient to resolve the issue in its favor. Fed. R. Civ. P. 56(c); *see Anderson*, 477 U.S. at 248–49; *Hal*

24

*Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). The nonmoving party's

25

failure to raise a genuine issue of material fact for trial requires granting summary judgment in favor of

26

the movant. Fed. R. Civ. P. 56(e)(3). In actions, like this one, where a court with federal question

27

jurisdiction is "exercising supplemental jurisdiction over state law claims," the court "is bound to apply

28

the law of the forum state," as to substantive issues including the elements of the causes of action, measure

1   of damages, and applicable defenses. *Seoul Semiconductor Co. v. Finelite, Inc.*, 694 F. Supp. 3d 1199,

2   1207 (N.D. Cal. 2023).

3   **IV.   ARGUMENT**

4       **A.   EFTA Claim**

5           Plaintiff's first claim—brought under the federal Electronic Fund Transfer Act (15 U.S.C. §§ 1693,

6   *et seq.*)—fails because it is undisputed that it was the unauthorized third party, and not Plaintiff, who

7   exclusively created, controlled, and accessed the Unauthorized Account. Because the Unauthorized

8   Account did not belong to Plaintiff, PayPal had no duties to Plaintiff under the EFTA and Regulation E[3]

9   with respect to the Unauthorized Account.

10          **1.   The EFTA and Regulation E Do Not Apply to the Unauthorized Account.**

11           Plaintiff specifically contends that PayPal violated Sections 1693f and 1693g(a) of the EFTA. (*See*

12   ECF 11, ¶¶ 71, 73, 78–79.) Under Section 1693f, if a consumer notifies a financial institution that <u>their</u>

13   <u>consumer account</u> with the financial institution contains an error, the institution must investigate the

14   alleged error, determine whether an error has occurred, and report the results of its investigation to the

15   consumer within ten business days. *See* 15 U.S.C. § 1693f(a). If an error is found, the institution must

16   correct it, *id.* § 1693f(b); however, the institution can also provisionally credit the consumer's account in

17   the interim if further investigation is need. *Id.* § 1693f(c). As relevant here, under Section 1693f, an error

18   consists of: "(1) an unauthorized electronic fund transfer" or "(2) an incorrect electronic fund transfer

19   from or to <u>the consumer's account</u>." *Id.* (emphasis added). An "unauthorized electronic fund transfer" is

20   defined as "an electronic fund transfer <u>from a consumer's account</u> initiated by a person other than the

21   consumer without actual authority to initiate such transfer and from which the consumer receives no

22   benefit…." 15 U.S.C. § 1693a(12) (emphasis added).

23           Section 1693g(a), by extension, sets limits on a consumer's liability for unauthorized fund transfers

24   as well as exceptions to those limits. *See Widjaja v. JPMorgan Chase Bank, N.A.*, 21 F.4th 579, 582 (9th

25   Cir. 2021). And like Section 1693f, it is limited to transfers "involving <u>the consumer's account</u>." 15 U.S.C

26   § 1693g(a)(2); *id.* § 1693g(a) ("A consumer shall be liable for any unauthorized electronic fund transfer

27

28   ---
[3] Regulation E is the EFTA's implementing regulation. *See Nordberg v. Trilegiant Corp.*, 445 F. Supp.
2d 1082, 1094 (N.D. Cal. 2006).

involving <u>the account of such consumer</u>….") (emphasis added).

Under both sections at issue here, the EFTA only imposes duties on a financial institution for fraudulent transfers involving the consumer's account with that financial institution. This limitation is critical here because the PayPal account that received the Citibank transfers was not in fact Plaintiff's account. Plaintiff cannot provide any evidence that the Unauthorized Account was *her* PayPal account, and has conceded the Unauthorized Account did not belong to her. (Lee Dep. at 60:11–15.) Plaintiff also repeatedly acknowledged that the Unauthorized Account was unauthorized (*see* ECF 11, ¶¶ 57a–c, 61, 105b, f–g, 112), admitted that the unauthorized third party created it (Lee Dep. at 187:14–17), and admitted that she never logged into the account because she lacked the credentials (Lee Dep. at 187:8–17). It is also undisputed that none of the stolen funds were ever transferred to or from Plaintiff's Real Account. (Lee Dep. at 60:11–19, 100:7–10.) While the unauthorized third party used some of Plaintiff's identifying information to create the Unauthorized Account, the third party had exclusive control over the account. (Lee Dep. at 60:20–61:5.) Plaintiff was not aware of this account prior to the money being stolen, did not access it, and had no control over it. Because the Unauthorized Account did not belong to Plaintiff, PayPal had no duties under the EFTA with respect to the fraudulent transfers to that account.

That institutions like PayPal do not have duties under the EFTA with respect to fraudulently-opened accounts is not a novel interpretation of the EFTA. Indeed, there is ample case law supporting that conclusion. In other cases involving similar transfers from a plaintiff's account to an unauthorized account at the receiving institution, courts have roundly held that the EFTA does not apply because the plaintiff never entered into a contractual agreement to open *the unauthorized* account.

For example, in *Herrera v. TD Bank, N.A.*, the plaintiff claimed the defendant TD Bank violated the EFTA after an unauthorized third party used her information to open a checking account at the bank without her consent. *See* 682 F. Supp. 1271, 1273–74 (S.D. Fla. 2023). Concluding TD Bank did not violate the EFTA, the court held that a prerequisite for a claim under Section 1693i of the EFTA is that the plaintiff entered into an agreement with a financial institution for an account for electronic fund transfer ("EFT") services. *Id.* at 1276. The court so held because Section 1693i is limited to a "such consumer's account"—thus recourse under the EFTA is limited to account holders rather than consumers more broadly. *Id.* And because the plaintiff did not assent to creating the unauthorized account, the bank

1   had no liability under the EFTA. *Id.*

2   Likewise, in factual circumstances strikingly similar to this case involving an EFTA claim <u>against</u>

3   <u>PayPal</u>, the court in *Dorsey v. U.S. Bank National Association* held that PayPal was not liable under the

4   EFTA after an unauthorized third party opened a PayPal account in the plaintiff's name without his

5   knowledge or consent. 2012 WL 13001917, at *4–6 (M.D. La. Apr. 2, 2012). Like *Herrera*, the court held

6   that the EFTA did not apply because the "forged PayPal account [was] not a valid account belonging to

7   Plaintiff." *Id.* at *6. Instead, the EFTA only applies to an account "entered into between ... [t]he consumer

8   and the *financial institution*." *Id.* (citing 12 C.F.R. Pt. 205, Supp. I § 205.3).  Further, in *Marquess v.*

9   *Pennsylvania State Employees Credit Union*—which *Herrera* and *Dorsey* cited favorably—the Third

10  Circuit held that the credit union defendant did not have EFTA liability with respect to a fraudulently-

11  opened account which the plaintiff did not authorize. *See* 427 F. App'x 188 (3d Cir. 2011).

12  The upshot of *Herrera*, *Dorsey*, and *Marquess* is that entities like PayPal are not liable under the

13  EFTA with respect to unauthorized accounts, like the Unauthorized Account here at issue. And while

14  *Herrera* and *Marquess* involved Section 1693i the EFTA, that distinction is immaterial because Sections

15  1693f and 1693g(a), upon which Plaintiff relies, contain the same "consumer account" language. *Compare*

16  15 U.S.C. § 1693i(a) ("such consumer's account"), *with* § 1693f(a)(2) ("the consumer's account contains

17  an error"), § 1693f(c) ("provisionally recredit the consumer's account"), § 1693f(f)(2) ("an incorrect

18  electronic fund transfer from or to the consumer's account"), *and* § 1693a(12) ("the term 'unauthorized

19  electronic fund transfer' means an electronic fund transfer from a consumer's account").

20  Like the case law that firmly supports the inapplicability of the EFTA to PayPal here, Regulation

21  E (the EFTA's implementing regulation) "applies to any electronic fund transfer that authorizes a financial

22  institution to debit or credit a *consumer's account*…." 12 C.F.R. §1005.3(a) (emphasis added). The CFPB

23  has interpreted this to mean that Regulation E only applies to "an account for which an agreement for EFT

24  services to or from the account has been entered into between the consumer and the financial institution."

25  12 C.F.R. Pt. 1005, Supp. I § 1005.3(a)(1)(i).[4] The CFPB's interpretation of Regulation E's applicability

26

27  _____
    [4] Except for a few narrow exceptions not implicated here, the Dodd-Frank Wall Street Reform and
    Consumer Protection Act transferred rulemaking authority under the EFTA from the Federal Reserve
28  Board to the CFPB. *See* 12 U.S.C. §§ 5514(d), 5581(b)(1); *see also* 15 U.S.C. § 1693b(a)(1) (granting
    rulemaking authority under EFTA to CFPB).

is identical to the Federal Reserve Board's interpretation of the same,[5] which *Marquess* and *Dorsey* relied on. *See* 427 Fed. App'x at *1; 2012 WL 13001917, at *5–6. That the EFTA's implementing regulation would not apply to PayPal here further demonstrates why Plaintiff's EFTA claim fails.

Finally, the structure of the EFTA demonstrates the absurdity of Plaintiff's allegations with respect to PayPal. Plaintiff claims PayPal violated the EFTA by failing to provisionally re-credit her account. (*See* ECF 11, ¶ 66). Section 1693f(c) requires financial institutions to provisionally credit accounts while investigating claims of transfer errors. But provisionally recrediting the account to which the funds were *transferred by the unauthorized third party* makes no sense, particularly given Plaintiff's total lack of access to the account. Of course, Plaintiff was not without recourse here. It was Citibank's responsibility as the institution which maintained the account the unauthorized third party stole the money from to adhere to the EFTA. Simply put, Plaintiff's gripe is with Citibank, not PayPal.

### 2.  Plaintiff's Alleged Damages Cannot be Attributed to PayPal.

Because the EFTA does not apply, PayPal is not liable for any of the damages Plaintiff seeks. (*See* ECF 11, Prayer for Relief ¶¶ e–h.) Moreover, even if Plaintiff's faulty theory of liability were not an issue, the damages she seeks from PayPal are unavailable to her because the EFTA does not provide for the recovery of non-economic damages, and because Plaintiff seeks an unlawful double recovery.

### a. The EFTA does not allow for recovery of emotional distress damages.

PayPal anticipates that Plaintiff will argue that the EFTA's "actual damage" provision allows litigants to recover non-economic damages like emotional distress. *See* 15 U.S.C. § 1693m(a)(1). She is wrong. PayPal has conducted extensive research and was unable to find any cases holding that emotional distress damages are available as "actual damages" under the EFTA. This Court should not be the first.

The U.S. Supreme Court has observed that the term "actual damages" has a "chameleon-like quality" that has varied meanings throughout the U.S. Code. *FAA v. Cooper*, 566 U.S. 284, 294 (2012). So, to discern its meaning, it is critical to "consider the particular context in which the term appears." *Id.* For at least two reasons, the EFTA's context shows that Congress did not intend to allow for recovery of

---

[5] *See* 12 C.F.R. Pt. 205, Supp. I § 205.3(a)(1)(i) ("The requirements of the regulation apply only to an account for which an agreement for EFT services to or from the account has been entered into between the consumer and the financial institution….")

emotional distress damages under the Act.

*First*, the EFTA's purpose is to "provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." 15 U.S.C. § 1693(b). The harms the EFTA is intended to prevent are purely economic, as Congress designed it to protect consumers from incurring pecuniary losses due to unauthorized fund transfers. That makes it quite unlike other statutes such as the Fair Credit Reporting Act ("FCRA") or the Fair Housing Act ("FHA"), where courts have interpreted their "actual damages" language to include nonpecuniary harms, like emotional distress, that are difficult to quantify. *See FAA*, 132 U.S. at 292–93. For instance, in the FCRA, Congress's aim was to prevent non-economic injuries to consumers like harms to their "character," "general reputation," and "right to privacy." 15 U.S.C. § 1681a(2), (4). The harms that Congress sought to address in the FHA—namely, discrimination in the sale or rental of housing—are likewise non-economic. *See* 42 U.S.C. § 3604. The EFTA is instead analogous to federal statutes aimed at compensating purely economic losses, like the Securities Exchange Act of 1934, which the Ninth Circuit has held only allows for recovery of economic losses as actual damages. *See Ryan v. Foster & Marshall, Inc.*, 556 F.2d 460, 464 (9th Cir. 1977) ("Actual damages mean some form of economic loss."); *see also Osofsky v. Zipf*, 645 F.2d 107, 111 (2d Cir. 1981) (noting purpose of the Act's actual damages provision "is to compensate civil plaintiffs for economic loss suffered as a result of wrongs committed in violation of the 1934 Act").

*Second*, the linguistic structure of the EFTA—specifically, the contrasting damages language in Section 1693h versus Section 1693m—further illustrates that actual damages do not encompass emotional distress damages.[6] Section 1693m(a) states that a failure to comply with the EFTA renders the violator liable for "any actual damage sustained by such consumer as a result of such failure." In contrast, Section 1693h(a)'s much broader damages provision states "a financial institution shall be liable to a consumer for *all damages proximately caused by*" the failure to make authorized fund transfers or a consumer's stop payment for a preauthorized transfer. *Id.* (emphasis added). Moreover, 1693h(c) states that for

---

[6] Plaintiff cannot seek damages under Section 1693h because that section is only implicated when a financial institution failed to make an electronic fund transfer or failed to stop a preauthorized fund transfer when instructed to do so. *See* 15 U.S.C. § 1693h(a)(1)–(3). None of the transfers here meet those requirements.

1   unintentional violations of subsection (a), a financial institution is only liable for "actual damages." Taking

2   1693h(c) and 1693m(a) together shows that "actual damages" encompasses a narrower category of

3   damages than "all damages proximately caused by" under the EFTA. It thus follows that actual damages

4   are limited to economic losses. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress

5   includes particular language in one section of a statute but omits it in another section of the same Act, it

6   is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or

7   exclusion.") (cleaned up). Accordingly, Plaintiff's alleged non-economic damages are not recoverable as

8   "actual damages" under the EFTA.

9                          **b. Plaintiff seeks unlawful double recovery from PayPal.**

10          Under federal and California law, well-settled legal principles prevent plaintiffs from receiving

11   duplicative recovery of damages.[7] *See Uthe Tech. Corp. v. Aetrium, Inc.*, 808 F.3d 755, 760 (9th Cir.

12   2015); *Tavaglione v. Billings*, 847 P.2d 574, 580 (Cal. 1993), *as modified* (Apr. 28, 1993) ("Double or

13   duplicative recovery for the same items of damage amounts to overcompensation and is therefore

14   prohibited."). The one satisfaction rule "reflects the equitable principle that a plaintiff who has received

15   full satisfaction of its claims from one tortfeasor generally cannot sue to recover additional damages

16   corresponding to the same injury from the remaining tortfeasors." *Uthe*, 808 F.3d at 760. "[T]he animating

17   purpose of the one satisfaction rule is to prevent double recovery and unjust enrichment." *Id.* at 761.

18          Despite these well-settled principles, Plaintiff seeks an unlawful—and frankly, outrageous—

19   double recovery from PayPal. In her arbitration with Citibank involving the same claims and conduct at

20   issue here, Plaintiff was awarded:

21   •   $20,550 in economic damages (presumably the amount of the stolen funds less $50);

22   •   $625,000 in non-economic damages;

23   •   $1,000 in statutory damages; and

24   •   punitive damages, costs, interest, and attorney fees to be determined in a second phase.

25   _____

26   [7] Although PayPal addresses these principles in its argument on Plaintiff's EFTA claim, California law
     equally bars her from seeking double recovery from PayPal for any of her three state law claims.
27   Because the Ninth Circuit has held that the federal law of damages applies to federal causes of action,
     *see Uthe*, 808 F.3d at 760 n.3, it follows that the California law of damages applies to Plaintiff's state
28   law causes of action.

(*See* Arbitration Award.) The arbitrator then trebled the actual damages award to $1,895,000[8] (*id.*)—for a case where Plaintiff had lost $20,600 due to fraudulent conduct perpetrated by neither Citibank nor PayPal. Without even accounting for the additional amounts the arbitrator intends to award, Plaintiff has received a damages award more than *ninety* times greater than her out-of-pocket loss.

Through the arbitration against Citibank, Plaintiff has been compensated at least three times over for all of her claimed economic and emotional distress damages (despite their lack of recoverability in this context), as well as her costs, interest, and attorney fees. To allow Plaintiff to recover those same damages from PayPal is unconscionable and offends all notions of equity and justice. The Court should squarely reject Plaintiff's attempts to obtain an unfair and unlawful double recovery.

### B.   UCL Claim

Plaintiff's claim for violation of California's Unfair Competition Law, Cal. Bus. & Profs. Code §§ 17200 *et seq.*, fails for two reasons, either of which is sufficient to grant summary judgment. *First*, Plaintiff cannot prevail on this claim because she is not entitled to any of the limited remedies available to plaintiffs in private actions under the UCL. *Second*, she cannot show that PayPal engaged in any act or practice that is "unlawful," "unfair," or "fraudulent."

### 1.   Plaintiff is Not Entitled to Either of the Limited Remedies Available Under the UCL.

"While the scope of conduct covered by the UCL is broad, its remedies are limited. A UCL action is equitable in nature; damages cannot be recovered." *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 943 (Cal. 2003); *accord In re Meta Pixel Tax Filing Cases*, 2024 WL 1251350, at *23 (N.D. Cal. Mar. 25, 2024). Summary judgment is appropriate on Plaintiff's UCL claim because she is not entitled to either of the limited remedies available to private plaintiffs in UCL actions. *See Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1135 (9th Cir. 2014) (holding defendant was entitled to summary judgment on UCL claim when plaintiffs had no remedy under the UCL as they did "not seek injunctive relief and [had] no claim for restitution").

"Prevailing plaintiffs are generally limited to injunctive relief and restitution. Plaintiffs may not receive damages, much less *treble* damages, or attorney fees." *Cel-Tech Commc'ns, Inc. v. Los Angeles*

---

[8] It is unclear how the arbitrator calculated this amount as trebling the actual damage award yields $1,936,650.

*Cellular Tel. Co.*, 973 P.2d 527, 539 (Cal. 1999). "Compensatory damages are not recoverable as restitution." *Zhang v. Superior Ct.*, 304 P.3d 163, 168 (Cal. 2013) (brackets and citation omitted). The prohibition against recovering damages under the UCL necessarily encompasses Plaintiff's request for non-economic damages, such as those for emotional distress. *See Kwikset Corp. v. Superior Ct.*, 246 P.3d 877, 885 (Cal. 2011) (noting plaintiff "must demonstrate some form of economic injury" to proceed under UCL); *accord In re Google Assistant Priv. Litig.*, 546 F. Supp. 3d 945, 970 (N.D. Cal. 2021). "In a private action under the unfair competition law"—such as this one—"the only monetary remedy available is restitution." *Ngu v. City Bail Bonds*, 71 Cal. App. 5th 644, 651 (2021). "For the purposes of requesting injunctive relief, a party does not have standing unless it is able to show a 'real or immediate threat that [it] will be wronged again.'" *Hightower v. City & Cnty. of San Francisco*, 77 F. Supp. 3d 867, 886 (N.D. Cal. 2014) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).

Because Plaintiff's potential remedies are limited to restitution and injunctive relief, she cannot recover most of the relief she seeks in this matter including non-economic damages, treble damages, or attorney fees. (*See generally* ECF 11, Amended Complaint, Prayer for Relief.) The only monetary award she could theoretically recover is $20,600 as restitution for the funds that the unauthorized third party stole from her. *See Fresno Motors*, 771 F.3d at 1135 ("The restitutionary relief is limited to money or property lost by the plaintiff and acquired by the defendant."). But even that remedy is unavailable to her because PayPal did not "acquire" the stolen funds—and because that amount has already been restored to her through the arbitration award against Citibank.

### a. Plaintiff cannot meet the elements of a UCL restitution claim.

"In order to establish an entitlement to restitution under the UCL, a plaintiff must show: (1) that she had at one time 'an ownership interest' in the money or property she 'lost' and (2) that money or property must have been 'acquired' by the defendant." *Kanji v. Bank of Am., N.A.*, 2020 WL 8175548, at *7 (C.D. Cal. Aug. 25, 2020) (citing *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 895 (Cal. 2011)). There is no possible way for Plaintiff to show that PayPal acquired any portion of the $20,600 that the unauthorized third party stole from her, as she admits that the third party stole all of the funds (*see* ECF 11, ¶ 61), and the evidence reflects that the third party removed all of the funds from the Unauthorized Account. There is no evidence that PayPal retained any of those funds (because it has not).

1   Numerous federal courts in California, including in this district, have held that a defendant does

2   not "acquire" money from the plaintiff—and therefore cannot satisfy a necessary element of restitution

3   under the UCL—when a third party stole and kept the money. *See, e.g.*, *Sparkman v. Comerica Bank*,

4   2023 WL 8852487, at *9 (N.D. Cal. Dec. 21, 2023); *Kanji*, 2020 WL 8175548, at *7; *Lusinyan v. Bank*

5   *of Am., N.A.*, 2015 WL 12777225, at *5 (C.D. Cal. May 26, 2015). That is exactly the scenario here.

6   Plaintiff cannot establish a right to restitution when it is undisputed that PayPal has not retained any of the

7   stolen funds. Even setting aside Plaintiff's inability to satisfy the "acquired by" element of a UCL

8   restitution claim, Plaintiff cannot obtain restitution from PayPal because she was already made whole in

9   her arbitration with Citibank. (*See* Arbitration Award.) Consequently, Plaintiff has no uncompensated

10  losses upon which to base a claim for restitution from PayPal. The purpose of restitution is to make a party

11  whole, not award them with a windfall or "double" recovery on top of already tripled economic damages.

12  *See Benn v. Allstate Ins. Co.*, 569 F. Supp. 3d 1029, 1036 (C.D. Cal. 2021) ("The object of restitution is

13  to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest.");

14  *see also* Section A.2.b., *supra*.

### b. Plaintiff lacks standing to seek injunctive relief.

16  Moving to Plaintiff's request for injunctive relief—the only other remedy available to UCL

17  plaintiffs—she lacks standing to seek this relief. Plaintiff cannot present any evidence to even hint that

18  there is a "certainly impending" injury that PayPal will cause her or a "substantial risk" that PayPal will

19  harm her in the future. *Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986, 991 (9th Cir. 2023). "A

20  plaintiff must demonstrate standing separately for each form of relief sought," *id.* (cleaned up), and must

21  do so at each "successive stage" of litigation—including at summary judgment. *DZ Rsrv. v. Meta*

22  *Platforms, Inc.*, 96 F.4th 1223, 1240 (9th Cir. 2024).

23  Plaintiff has no evidence that demonstrates she meets these exacting standing requirements. The

24  genesis of this dispute was the theft of funds by an unauthorized third party, and it is undisputed that

25  PayPal played no role in perpetrating that fraud. To the contrary, PayPal cooperated with Plaintiff in

26  gathering and turning over information that Plaintiff found helpful to the pursuit of her stolen funds from

27  Citibank. The full extent of PayPal's involvement here is that the unauthorized third party happened to

28  choose a PayPal account that they fraudulently created and controlled as the medium for transferring and

1  later withdrawing the stolen funds. There is certainly no evidence of a real or immediate threat of Plaintiff

2  having funds stolen from her Citibank account again, transferred to a fraudulently-created PayPal account,

3  and then subsequently drained from that account. In the absence of that showing, Plaintiff lacks standing

4  to pursue injunctive relief against PayPal. *See Hightower*, 77 F. Supp. 3d at 886.

5  Because Plaintiff has no right to restitution or standing to pursue injunctive relief—the only

6  remedies available under the UCL—PayPal is entitled to summary judgment on the UCL claim. *See*

7  *Fresno Motors, LLC*, 771 F.3d at 1135.

8  **2. PayPal's Conduct was Not Unlawful, Unfair, or Fraudulent.**

9  Although Plaintiff's inability to obtain either restitutionary or injunctive relief against PayPal is

10  sufficient to doom her UCL claim, there is also no evidence to support her allegations that PayPal's

11  conduct was unlawful, unfair, and/or fraudulent.

12  Starting with the **unlawful** prong, Plaintiff must prove PayPal's actions violated another

13  "borrowed" law. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012) (citation

14  omitted). The borrowed law Plaintiff relies on here is the EFTA. (*See* ECF 11, Amended Complaint, ¶

15  85.) Because her EFTA claim fails for the reasons explained in Section A.1., the "unlawful" prong of her

16  UCL claim necessarily fails too. *See Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 923 (N.D. Cal.

17  2019) (noting UCL claim for unlawful behavior fails if underlying claim fails).

18  For claims of **unfair** business practices involving consumers, courts apply two tests.[9] The first

19  asks whether a business practice "offends an established public policy or when the practice is immoral,

20  unethical, oppressive, unscrupulous or substantially injurious to consumers." *Hodsdon v. Mars, Inc.*, 162

21  F. Supp. 3d 1016, 1026 (N.D. Cal. 2016); *accord Hodsdon v. Mars, Inc.*, 891 F.3d 857, 866–67 (9th Cir.

22  2018). The second asks whether the UCL claim is "tethered to some specific constitutional, statutory, or

23  regulatory provisions." *Hodsdon*, 162 F. Supp. 3d at 1027. Plaintiff cannot satisfy either test.

24  Under the first test, there is no evidence that PayPal has an established practice of purposefully

25  failing to investigate claims of fraud or to freeze accounts that hold stolen funds. When given the

26  opportunity to provide evidence of wrongdoing at her deposition, Plaintiff could not point to any evidence

27

28  ───────────────
[9] Some courts apply a third test borrowed from Section 5 of the Federal Trade Commission Act, but that test does not apply in consumer cases. *See Hodsdon*, 162 F. Supp. 3d at 1027 n.5.

that PayPal actively withheld information from her during its investigation. (Lee Dep. at 80:25-81:12.) Contrary to Plaintiff's unfounded contentions, the evidence shows that PayPal's actions were anything but immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff. Indeed, before filing this lawsuit, Plaintiff praised PayPal for thoroughly investigating her claims. Even as recently as a few months ago, she minimized PayPal's role relative to Citibank. (Lee Dep. at 167:17–168:17; Lee Dep. Exh. 10 at LEE000178; Arbitration Transcript at 97:11–13 ("[PayPal] wronged me, but I feel like it's – it's not even close to what Citi did.").) On numerous phone calls with Plaintiff, PayPal team members tried to locate the Unauthorized Account but could not because Plaintiff did not provide sufficient information about it. However, as soon as PayPal received the documents included with Plaintiff's CFPB complaint that provided the necessary information, PayPal quickly moved to freeze the Unauthorized Account and provided Plaintiff additional information on her claim. PayPal's actions were not unfair.

As for the second test, Plaintiff does not even attempt to plead in her Complaint that PayPal's allegedly unfair conduct was tethered to a specific constitutional, statutory, or regulatory provision. (*See* ECF 11, ¶¶ 89–101.) And, even if she had, PayPal already explained in Section A.1. why Plaintiff's claim under the EFTA is not viable. Plaintiff's claim under the "unfair" prong of the UCL thus fails.

Finally, Plaintiff cannot point to any evidence that PayPal engaged in **fraudulent** business practices. Under the UCL's fraudulent prong, a violation occurs if a party engages in a practice that is "likely to deceive the public." *Nia v. Bank of Am., N.A.*, 2024 WL 1298004, at *25 (S.D. Cal. Mar. 26, 2024). While Plaintiff's allegations regarding PayPal's supposedly "fraudulent" conduct are vague (*see* ECF, ¶ 105), she seemed to suggest at her deposition and in her responses to written discovery requests that it was PayPal's failure to properly investigate her claims of fraud. (*See* ECF 11, ¶ 105; Lee Dep. at 82:3-13; Pltf.'s Responses to PayPal's ROGs at ROG 6.) She also suggested that PayPal lied to her in conducting its investigation by withholding information from her. (Lee Dep. at 80:9-24.) But Plaintiff has no evidence of this supposedly fraudulent conduct, nor can she identify any specific statements from PayPal that were untrue—much less, fraudulent—at the time they were made. (The absence of a fraud claim in Plaintiff's Complaint is telling, as there are no credible allegations that would support such a claim.) Moreover, when given the opportunity to point to specific examples of instances where PayPal *actively* withheld information from her, Plaintiff could not. (*See* Lee Dep. at 80:25-81:12.) Instead,

1    Plaintiff could only offer conjecture and her own feelings that PayPal intentionally withheld information

2    from her and "gaslit" her. (Lee Dep. at 26:19; 82:3-7.) Plaintiff's unsubstantiated speculation and feelings

3    are not evidence, and do not create a genuine factual dispute that would allow her claim under the

4    "fraudulent" prong of the UCL to survive summary judgment. *See Nelson v. Pima Cmty. Coll.*, 83 F.3d

5    1075, 1081–82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for

6    purposes of summary judgment."). For these reasons, PayPal respectfully requests that the Court grant

7    summary judgment in PayPal's favor on Plaintiff's UCL claim.

8        **C.  Negligence Claim**

9        Plaintiff's negligence claim against PayPal is also ripe for summary judgment. "To prevail in a

10   negligence action, a plaintiff must establish the defendant owed a legal duty, the defendant breached that

11   duty, and the breach proximately caused the plaintiff's damages. Absent a legal duty, any injury is an

12   injury without actionable wrong. Duty, being a question of law, is particularly amenable to resolution by

13   summary judgment." *Archer v. Coinbase, Inc.*, 53 Cal. App. 5th 266, 278 (2020) (cleaned up); *see*

14   *Makhzoomi v. Sw. Airlines Co.*, 419 F. Supp. 3d 1136, 1159 (N.D. Cal. 2019). Plaintiff cannot prove any

15   of these elements are met here.

16       **1.  Plaintiff Cannot Establish PayPal Owed Her a Legal Duty in Connection with the**

17           **Investigation of Transactions Involving a PayPal Account that Did Not Belong to Her.**

18       "Recovery in a negligence action depends as a threshold matter on whether the defendant had a

19   duty to use due care toward an interest of the plaintiff's that enjoys legal protection against unintentional

20   invasion." *Kurtz-Ahlers, LLC v. Bank of Am., N.A.*, 48 Cal. App. 5th 952, 955 (2020) (cleaned up). No

21   duty means no cause of action, and "absent a duty, the defendant's care, or lack of care, is irrelevant."

22   *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal. App. 4th 472, 482 (1996).

23       Plaintiff's negligence claim stumbles out of the gate because she cannot establish PayPal owed her

24   a duty. Under California law, banks generally do not owe a fiduciary duty of care to customers. *See Das*

25   *v. Bank of Am., N.A.*, 186 Cal. App. 4th 727, 741 (2010) ("[T]he relationship between a bank and its

26   depositor is not fiduciary in character."). Nor do banks generally owe a fiduciary duty to noncustomers.

27   *See Software Design*, 49 Cal. 4th at 479; *Attisha Enterprises, Inc. v. Cap. One, N.A.*, 505 F. Supp. 3d 1051,

28   1056 (S.D. Cal. 2020). Banks also have no duty with respect to the withdrawal from an account. *See*

*Software Design*, 49 Cal. App. 4th at 481 (rejecting the argument that bank was negligent in case involving theft of funds because there was no authority that it had a duty to supervise account activity).

In rejecting negligence claims, California courts have held that the plaintiff failed to satisfy the duty element of that cause of action when they did not have a fiduciary relationship with the financial institution for the account at issue. *See, e.g.*, *Kurtz-Ahlers*, 48 Cal. App. 5th at 959 (concluding bank did not have a duty to a depositor to investigate fraudulent activity in a separate depositor's account and dismissing negligence claim); *id.* at 962 ("In sum, we conclude overriding policy considerations preclude the existence of an 'intra-bank' monitoring duty under general tort principles.") (quotation marks omitted); *Casey v. U.S. Bank Nat. Ass'n*, 127 Cal. App. 4th 1138, 1150–52 (2005) (concluding no duty to police account activity); *Chazen v. Centennial Bank*, 61 Cal. App. 4th 532, 537 (1998) (holding no duty "to supervise account activity" or "police their fiduciary accounts" and "no contractual obligation to persons other than the account holder"). In *Casey*, the court even held that a financial institution's knowledge of suspicious account activities "without more"—*i.e.*, knowingly assisting the fraudulent scheme—did "not give rise to tort liability." 127 Cal. App. 4th at 1151.

Given this overwhelming authority, if banks do not have a duty to non-account holders to investigate suspicious account activity, even if they have knowledge of it, then PayPal—which, as a payment service provider, offers narrower services than a bank—surely does not. Indeed, at least one court has held just that, concluding that PayPal did not have fiduciary duty to the plaintiff and citing a decision from the California Court of Appeal for support. *See Maynard v. PayPal, Inc.*, 2019 WL 3552432, at *6 (N.D. Tex. Aug. 5, 2019) (citing *McCann v. Lucky Money, Inc.*, 129 Cal. App. 4th 1382 (2005)). In *McCann*, the court concluded a money transmitter did not have a fiduciary duty to its customers. 129 Cal. App. 4th at 1398–99. PayPal's services are analogous to those offered by the money transmitter in *McCann*, and the Court should therefore similarly hold that PayPal had no duty here. *See also Kurtz-Ahlers*, 48 Cal. App. 5th at 960 ("Case law has long recognized the significant public policies underlying the rule a bank owes no duty to nondepositors to investigate or disclose suspicious activities on the part of an account holder.") (cleaned up); *Casey*, 127 Cal. App. 4th at 1151.

Moreover, even if the Court was convinced that PayPal did have a duty here, the economic loss doctrine bars Plaintiff's negligence claim. In *Hobbs by & through Hobbs v. Wells Fargo Bank, National*

*Association*, the court noted: "Multiple courts have applied the economic loss rule to bar a plaintiff's claim against a bank arising from fraudulent activity." 2022 WL 17972163, at *4 (S.D. Cal. Sept. 14, 2022) (collecting cases applying California law). This include negligence claims involving allegations of emotional distress, as was the case in *Hobbs*. *See id.*

### 2. Even if Plaintiff Could Establish a Legal Duty, PayPal Did Not Breach It.

Assuming *arguendo* that PayPal did have a duty to investigate Plaintiff's claims of fraud, the undisputed evidence shows that it did. For undisputed evidence that PayPal thoroughly investigated Plaintiff's claim, the Court need look no further than that exact assessment of PayPal's efforts made by Plaintiff. In an email to PayPal after it responded to her CFPB complaint, Plaintiff thanked PayPal for "thoroughly investigat[ing]" her claims of fraud, while also expressing that PayPal seemed like the only place where she could get information. (Lee Dep. at 167:17–168:17; Lee Dep. Exh. 10 at LEE000178.) By Plaintiff's own contemporaneous statements, PayPal was helpful—not responsible for her mountain of alleged losses. Moreover, PayPal promptly located and froze the Unauthorized Account as soon as it received enough information from Plaintiff to locate it. (Lee Dep. Exh. 8.)

### 3. PayPal's Conduct is Not the Proximate Cause of Plaintiff's Injuries.

Proximate cause has two aspects. *State Dep't of State Hosps. v. Superior Ct.*, 349 P.3d 1013, 1021 (Cal. 2015). The first is cause in fact, sometimes called but-for causation. *Id.* "An act is a cause in fact if it is a necessary antecedent of an event." *Id.* (citation omitted). "The second aspect of proximate cause focuses on public policy considerations." *Id.* at 1022. "Thus, proximate cause is ordinarily concerned, not with the fact of causation, but with the various considerations of policy that limit an actor's responsibility for the consequences of his conduct….Rules of legal cause operate to relieve the defendant whose conduct is a cause in fact of the injury, where it would be considered unjust to hold him or her legally responsible." *Id.* (cleaned up).

Here, PayPal is not the proximate cause of Plaintiff's losses. It is undisputed that the unauthorized third party was the sole mastermind of the theft and that PayPal was not involved in perpetrating the scheme. And while Plaintiff alleges that PayPal failed to properly investigate, even she minimizes PayPal role in this matter. (*See* Arbitration Transcript at 97:11–13 ("[PayPal] wronged me, but I feel like it's – it's not even close to what Citi did.").) Holding PayPal responsible as the proximate cause of Plaintiff's

alleged harms is unjust and poor policy because it was the unauthorized third party who masterminded this theft, and Plaintiff herself has downplayed PayPal's culpability. Plaintiff's allegations that PayPal caused to her suffer emotional distress by failing to conduct a proper investigation are nothing more than a convenient, post-hoc litigating position that conflicts with her own contemporaneous statements to PayPal thanking the company for "taking the time to thoroughly investigate my case." Given the evidence, no reasonable jury could conclude PayPal proximately caused Plaintiff's alleged injuries.

### 4.  Plaintiff Cannot Establish She Has Any Damages.

Finally, Plaintiff cannot prove she has *any* damages because all of her alleged losses have already been compensated. *See* Section A.2.b. *supra*. With respect to her alleged emotional distress damages specifically, the evidence clearly shows that Plaintiff was appreciative of PayPal's efforts and placed her blame solely on Citibank. Her claims of emotional distress now are simply a post-hoc litigating position.

### D.  Conversion Claim

Finally, Plaintiff's conversion claim fails because she cannot prove any of the necessary elements: "(1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Lee v. Hanley*, 354 P.3d 334, 344 (Cal. 2015). "California cases permitting an action for conversion of money typically involve those who have misappropriated, commingled, or misapplied specific funds held for the benefit of others." *Miller v. Bank of Am., N.A.*, 2022 WL 3704093, at *4 (E.D. Cal. Aug. 26, 2022) (citation omitted).

On the first element, California law is well-settled that a claim against a bank for conversion fails because the title to funds passes immediately to the bank upon deposit, and thus the bank, not the customer, owns the funds. *Crocker-Citizens Nat. Bank v. Control Metals Corp.*, 566 F.2d 631, 637 (9th Cir. 1977), *abrogated on other grounds by Hollinger v. Titan Cap. Corp.*, 914 F.2d 1564 (9th Cir. 1990); *Miller*, 2022 WL 3704093, at *4. With respect to the second element, the defendant's conduct "must be knowingly done," and "neither negligence, active or passive, nor a breach of contract, even though it results in injury to, or loss of, specific property, constitutes a conversion." *Berry v. Frazier*, 90 Cal. App. 5th 1258, 1271 (2023) (cleaned up). In other words, "conversion requires affirmative action to deprive another of property, not a lack of action." *Spates v. Dameron Hosp. Assn.*, 114 Cal. App. 4th 208, 222 (2003).

Here, it is undisputed that Plaintiff deposited her money into her Citibank Account. Under settled

1   California law, Citibank, not Plaintiff, owned the funds that the unauthorized third party transferred to

2   PayPal. *Crocker-Citizens Nat. Bank*, 566 F.2d at 637. Therefore, Plaintiff could not sustain a claim for

3   conversion against Citibank, and by extension, PayPal. Because she did not have legal title to the

4   transferred funds, her conversion claim fails as a matter of law. *Miller*, 2022 WL 3704093, at *4.

5   Even assuming Plaintiff's ownership of the funds, her conversion claim still fails because there is

6   no evidence PayPal knowingly aided the unauthorized third party to steal the funds. *Berry*, 90 Cal. App.

7   5th at 1271. Here, the unauthorized third party created the Unauthorized Account without Plaintiff's

8   authorization. PayPal, unaware of such conduct, acted pursuant to what it believed was lawful authority

9   from a valid PayPal account holder. PayPal's actions simply do not rise to the level of affirmative conduct

10  required to knowingly deprive Plaintiff of her property. *See id.* Moreover, even if, *arguendo*, PayPal did

11  not exercise due care in allowing the creation of a forged account or in permitting transfers to and from

12  said account, that alone cannot sustain any of Plaintiff's claims. *Id.* Finally, Plaintiff cannot prove the

13  damages element of her conversion claim because her losses have already been compensated.

14  Other courts have found that an unauthorized third party's transfer of funds from the plaintiff's

15  bank account does not constitute conversion with respect to the institution that maintains the account. *See*

16  *Dorsey*, 2012 WL 13001917, at *10 (dismissing plaintiff's conversion claim against PayPal where it was

17  the unauthorized third party who transferred plaintiff's funds into a forged PayPal account and PayPal had

18  no knowledge of the fraud); *see also Prignoli v. Bruczynski*, 2021 WL 4443895, at *11 (E.D.N.Y. Sept.

19  28, 2021) (dismissing plaintiff's conversion claim against bank where an unauthorized third party

20  transferred the funds); *Big Red Box, LLC v. Square, Inc.*, 2020 WL 465928, at *9–10 (D.S.C. Jan. 22,

21  2020), *report and recommendation approved in part sub nom. Big Red Box, LLC v. Tye Grisel*, 2020 WL

22  5545283 (D.S.C. Sept. 16, 2020) (dismissing plaintiff's conversion claim because Square's receipt of

23  funds wrongfully converted by a third person was not conversion as a matter of law).

24  Ultimately, PayPal's conduct does not give rise to a valid claim for conversion, and the Court

25  should award summary judgment to PayPal on this claim.

26  **V.   <u>CONCLUSION</u>**

27  For the foregoing reasons, PayPal respectfully requests that the Court grant summary judgment in

28  PayPal's favor as to each of Plaintiff's claims.

DEFENDANT PAYPAL INC.'S MOTION FOR SUMMARY JUDGMENT
Case No. 3:22-CV-02718-SK

-23-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DATED: August 26, 2024

**FOLEY & LARDNER LLP**
JOHN J. ATALLAH
BRYAN T. METTE


*/s/ John J. Atallah*
John J. Atallah
Attorneys for Defendant PayPal, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2024, I electronically filed **DEFENDANT PAYPAL, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** with the Clerk of the Court for the United States District Court for the Northern District of California, by using the Court's CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the Court's CM/ECF system.

I declare under penalty of perjury under the laws of the United States that the forgoing is true and correct.

Executed on August 26, 2024, at Los Angeles, California.

_/s/ John J. Atallah_
John J. Atallah